IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. YATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 10 C 5432 |
| | ) | |
| MICHAEL ASTRUE, | ) | Suzanne B. Conlon, Judge |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Michael Yates filed for Social Security disability benefits, claiming he was disabled from a combination of mental and physical ailments, including partial left-arm paralysis and sciatic nerve pain. He seeks judicial review of the administrative law judge's ("ALJ") decision denying benefits. *See* 42 U.S.C. § 405(g) The ALJ found that Yates had the residual functional capacity ("RFC") to perform a limited range of light work, restricted to unskilled work that he can do primarily with his right arm. On review, Yates contends the ALJ erred by rejecting his treating physician's opinion that restricted him to sedentary work and by rejecting his treating psychiatrist's opinion that he had marked limitations in several areas of daily mental functioning. Yates and the Commissioner of Social Security cross-move for summary judgment.

## I. Background

In 1981 at the age of 26, Yates was in a motorcycle accident that left him in a coma for several days and with impaired use of his left arm. A.R. 312. He was able to recover enough to work several jobs as a computer operator beginning in 1986. A.R. 209. He was laid off from his

1

last computer operator job in April 2005 after working there for nearly eight years. A.R. 209.

He filed for disability in June 2006, alleging an onset date of February 16, 2006.[1] A.R. 198. He

claimed he was disabled because of neck and arm problems, lower back and sciatic pain, and a

mental impairment. To prove his disability at the initial stage, Yates relied primarily on

treatment notes and assessments by his treating physician and treating psychiatrist. Yates also

underwent a state-ordered physical evaluation in October 2006 and a state-ordered psychiatric

evaluation in November 2006. The Social Security Administration denied his application

initially in December 2006 and upon reconsideration in May 2007. A.R 126–31, 133–35. Yates'

hearing before an ALJ was held on November 21, 2008. A.R. 31, 136.

Before the hearing, Yates supplemented the record with updated information from his

treating physician and treating psychiatrist; he submitted additional medical records about

treatment for his arm and neck pain.[2] A medical expert and a vocational expert testified at the

hearing.

## A. Jobs

Between the time Yates filed for disability and the hearing before the ALJ, he had three

other jobs. From December 2006 to May 2007, he worked as a security guard. A.R. 289. He

testified that he was fired for "complaining about not getting [his] money that was promised to

[him]." A.R. 39. He worked as a computer operator for about five weeks beginning in June

---

[1] During the administrative appeals process, Yates amended his alleged onset date to July 12, 2007. A.R. 301–02. This opinion does not turn on Yates' onset date.

[2] The ALJ found that a brachial plexus injury precluded the use of Yates' left arm for all but occasional assistance. A.R. 114. As to the remaining upper body complaints, the ALJ relied on Yates' hearing testimony that these issues were resolved and did not affect his ability to work. A.R. 110. Accordingly, the court does not consider his upper body impairments.

2007. A.R. 289. But he was released from that position because he "was not learning [his] position fast enough." A.R. 39. Finally, in November or December of 2007, he worked for about two weeks in an unknown capacity for someone replacing ADT security boxes. A.R. 40. He quit because the work caused too much pain in his hands. A.R. 40.

**B. Limitations on standing and walking**

In a 2006 questionnaire, Yates reported that he suffered from a sciatic condition since his accident in 1981, but it worsened in November 2005. A.R. 221. He stated he could stand and walk for only 30 minutes at a time because of his sciatic nerve and back pain. A.R. 218. He was prescribed Vicodin for arm, neck, and back pain; by 2000 or 2001 was taking six tablets a day. A.R. 44, 47.

His treating physician filled out an assessment in July 2006, diagnosing Yates with left sciatica and checking a box indicating evidence of nerve root compression from a straight leg raising test. A.R. 310. During the state-ordered physical examination in October 2006, Yates reported having pain mainly in the right lower back that did not radiate down into the lower leg and worsened after walking a couple of blocks, climbing a flight of stairs, or standing for about an hour. A.R. 322. The examining doctor concluded Yates had low back pain, primarily concentrated over the right SI joint. A.R. 324.

A November 2006 RFC assessment by a consulting physician found no limitations on Yates' ability to stand and walk, concluding Yates could stand and walk for six hours of an eight-hour workday. A.R. 328. A May 2007 RFC assessment also found no restrictions on Yates' ability to stand or walk. A.R. 360. Both assessments noted the presence of low back pain but found no evidence the pain limited Yates' activities. A.R. 334, 366.

At the hearing, the ALJ questioned Yates at length about his sciatica because the record contained conflicting evidence about its effect on his ability to stand and walk. Yates clarified that he suffers from both low back pain and sciatica. A.R. 44–45. His back pain acts up about every week to every other week and prevents him from walking the entire day. A.R. 43–44. He can stand for only 45 minutes to an hour at a time because of the sciatic condition. A.R. 52.

A medical expert testified that Yates' injuries would prevent him from standing for more than two hours. A.R. 72. He based his opinion on Yates' report of sciatic pain, a history of problems with the left knee, mild degenerative changes in the lumbar spine, and widespread trauma. A.R. 68–74. However, when the ALJ asked him to identify the medical tests in the record that support a diagnosis of sciatica, the medical expert testified none existed. A.R. 80. The medical expert inferred Yates suffered from sciatica based on the clinical diagnosis of right sacroiliac joint tenderness, but none of the standard tests to confirm sciatica were documented in the treatment notes. A.R. 80–81.

In response to the ALJ's concern about the lack of clinical findings to support a diagnosis of sciatica, Yates submitted further information from his treating physician after the hearing. In an interrogatory, the doctor stated that Yates has had sciatica since 1981 and listed the clinical bases for the diagnosis as an abnormal EMG, cervical spine x-ray showing cervical spondylosis, and an MRI of the cervical spine showing degenerative disc disease. A.R. 452. The doctor noted on a multiple impairment questionnaire that the sciatica diagnosis was supported by a "positive straight leg raising left leg." A.R. 453. The doctor stated that Yates had severe, constant pain in his left leg, precipitated by cold temperatures, standing, and walking. A.R. 454–55. Yates'

treating physician concluded Yates could not sit, stand, or walk for more than an hour in an eight-hour day. A.R. 455.

## C. Mental impairments

Yates began seeing a psychiatrist in 2003 because of anger issues at work; he yelled at coworkers and supervisors. A.R. 319. The psychiatrist put Yates on medication and saw him every three to four months. A.R. 319. In an August 2006 report, the treating psychiatrist listed Yates' diagnoses as impulse control disorder NOS and probable mild cognitive disorder NOS secondary to history of traumatic brain injury. A.R. 319. But he reported that the combination of medication and psychotherapy appeared to stabilize Yates' anger control issues. A.R. 319. Yates did not appear to be disabled from a psychiatric condition, but the psychiatrist noted he was not certain how Yates spends his day while not working and he was not fully aware of all Yates' medical conditions. A.R. 319–20. In an April 2008 psychiatric impairment questionnaire, the same treating psychiatrist presented a different view of Yates' social interactions. The psychiatrist found only mild limitations on Yates' ability to interact appropriately with the general public; he concluded Yates was effectively precluded from responding appropriately to instructions or criticism from supervisors, getting along with coworkers, and maintaining socially appropriate behavior. A.R. 283, 285. The treating psychiatrist explained that Yates' "interpersonal reactions at work are markedly limited and have repeatedly resulted in rage attacks." A.R. 286. These problems caused Yates to lose multiple jobs. A.R. 288.

The state-ordered psychiatric evaluation occurred in November 2006. The state psychiatrist diagnosed Yates with a mild personality disorder with impulsive tendencies. A.R.

336. He noted that even before high school, Yates had a history of getting upset and argumentative easily, but was never physically violent. A.R. 335. The state psychiatrist concluded Yates "seems to have adjusted fairly well in his life to his condition" and is still able to function. A.R. 337.

A psychiatric consultant reviewed the record and concluded in December 2006 that Yates suffered from a mental impairment that was not severe. A.R. 340. The consultant did not find the presence of a memory impairment, perceptual or thinking disturbance, emotional lability, or impairment in impulse control. A.R. 341. The consultant noted mild difficulties in maintaining social functioning, but no limitations in activities of daily living or in maintaining concentration, persistence, or pace. A.R. 350.

Yates received a neuropsychological examination in October 2007 to assess his neurocognitive and emotional functioning. A.R. 429. The psychologist found that Yates' cognitive abilities were generally in the average range except for weakness in the area of memory and processing speed. A.R. 430–31. The psychologist concluded Yates "is intellectually capable of obtaining employment. However, he may have trouble learning a new job or keeping pace with the demands of a new job due to his processing deficits." A.R. 432.

In an October 2006 questionnaire, Yates reported that he gets upset when people tell him to do something or criticizes him. A.R. 223. At the hearing, he testified that in the security officer job, he had difficulty getting along with his supervisors because of pay disputes. A.R. 54. Once or twice in the six months he held the job, he had yelling matches. A.R. 55. He had the same problem at the computer operator job that ended in 2005. A.R. 55. He believed his

medication and treatment have resolved his problems at work. A.R. 57. He reported having no problems controlling his mood in his personal life. A.R. 55.

At the hearing, the medical expert testified Yates met the paragraph A requirement for the organic mental disorder listing. A.R. 60. However, the medical expert did not have an opinion about whether the paragraph B or C criteria were met. A.R. 60, 66–67.

**D. ALJ Decision**

In February 2009, the ALJ denied benefits in a written decision. At step one of the five-step disability determination process, the ALJ found that Yates had not engaged in substantial gainful activity since the alleged onset date of February 16, 2006. A.R. 109. She considered Yates' interim jobs to be unsuccessful work attempts. A.R. 109.

At step two, the ALJ identified several severe impairments—organic mental disorder (post brain injury), brachial plexus injury on the left side, history of sciatica, and left knee arthritis—and two nonsevere impairments—impulse control disorder and a history of surgery to fuse the bones in the base of his right thumb. A.R. 109–10. The ALJ concluded Yates' physical impairments did not meet one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. A.R. 110. The ALJ concluded Yates did not meet the listing for an organic mental disorder, § 12.02. A.R. 110. The ALJ accepted the medical expert's opinion that paragraph A was satisfied, but she concluded Yates did not meet paragraph B or C criteria.

The ALJ determined Yates' RFC and concluded he could perform a limited range of light work at the unskilled level. A.R. 114. The ALJ found Yates could lift 20 pounds occasionally and 10 pounds frequently but was restricted to lifting with his right arm, using his left arm for

assistance only occasionally. A.R. 114. The ALJ determined that out of an eight-hour work day, Yates could stand, walk, or sit for six hours. A.R. 114.

The ALJ found that Yates' allegations regarding his limits on standing and walking due to sciatica were not well supported by the medical records. A.R. 116. The ALJ found no reference to complaints of sciatica in the treating physician's treatment notes (which are largely illegible). A.R. 116. The only reference the doctor made to sciatica was on the form for the Social Security determination. A.R. 116. The ALJ reasoned that had sciatica been a significant issue, there would be evidence in the treatment notes. A.R. 116. The ALJ noted the absence of objective medical evidence regarding lower back problems; a 1998 MRI of the lumbar region showed only mild degenerative changes and minimal bulging; the doctor's clinical bases were images of the cervical spine, unrelated to the lower back. A.R. 116–17, 119–20.

The ALJ considered the extent of limitation caused by Yates' mental impairments, which consisted of cognitive limitations and anger control issues. The ALJ concluded that the cognitive impairments identified in the neuropsychological exam could be addressed by limiting him to unskilled work requiring little judgment to perform simple tasks that can be learned quickly on the job. A.R. 112, 114–15. Regarding the anger control issues, the ALJ found the treating psychiatrist's assessment of marked limitations in interpersonal relationships at work was not supported by the record. A.R. 118. In particular, the ALJ noted the psychiatrist did not explain why his opinion changed from 2006, when he thought Yates was stabilized and not disabled from a psychiatric condition, to 2008, when he found several marked areas of limitation. A.R. 118–19. Additionally, the ALJ did not find support in the psychiatrist's treatment notes for the severe anger issues the psychiatrist identified. The ALJ concluded the treatment notes showed general

8

improvement, establishing that Yates "is stable, only occasionally angry, and is not prone to any physical violence." A.R. 110–11, 118. Nor did the ALJ find evidence in the record that Yates had lost several jobs due to episodes of anger, as the treating psychiatrist claimed. A.R. 118. Finally, the ALJ reasoned that if Yates' anger issues were severe, he would have seen the psychiatrist more than three or four times a year, and Yates himself testified that his anger was under good control and anger episodes were mild. A.R. 113, 119. The ALJ did not make accommodations for Yates' anger issues.

At step four, the ALJ determined Yates could not perform his past relevant work. A.R. 121. But at step five, the ALJ concluded Yates could perform the jobs of rental clerk, office helper, or information clerk, positions that exist in significant numbers in the national economy. A.R. 122.

The Appeals Council denied Yates' request for review, making the ALJ's decision the Commissioner's final decision. A.R. 1–3. Yates timely filed for judicial review.

## II. Analysis

This court does not make an independent determination of Yates' entitlement to disability benefits. *Simila v. Astrue*, 573 F.3d 503, 513–14 (7th Cir. 2009). The court reviews whether the ALJ used the correct legal standard and whether the denial of disability benefits is supported by substantial evidence. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ must provide a "logical bridge" between the evidence and her conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

## A. Limitations of standing and walking

Yates argues the ALJ improperly discounted his treating physician's assessment that he could stand and walk for less than an hour. A treating source's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). An ALJ must give "good reasons" for departing from a treating source's opinion. 20 C.F.R. § 404.1527(d)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). An ALJ may not discount a treating physician's opinion based solely on the conflicting opinion of a non-examining source. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Substantial evidence supports the ALJ's determination that the treating physician's opinion on standing and walking is not supported by diagnostic evidence. The ALJ reasonably focused on tests of the lower back, rather than tests of the upper extremities and cervical area, which would be irrelevant to lower back pain. Yates saw his treating physician multiple times a year. The ALJ logically concluded that if Yates' lower back problems were as severe as the treating physician asserted, she would expect reference to the condition in the doctor's treatment notes or evidence of diagnostic tests to determine the cause of the pain. The ALJ was not compelled to accept the straight leg raising test as adequate support for limits on standing and walking. As the ALJ noted, the date of the test was unknown and it was not documented in treatment notes. Contrary to Yates' assertion that the testifying medical expert "confirmed the presence of sciatica," the expert admitted that the record contained no diagnostic evidence of sciatica. Yates' Br. at 11. Finally, the ALJ did not reject the treating physician's opinion based

10

solely on the opinions of the non-examining physicians; the ALJ evaluated the treating

physician's opinion on its own merits before turning to other opinions.

Yates seems to argue that the RFC assessments were unreliable because they were done

by non-examining physicians and "[n]o other independent evidence found that Mr. Yates had no

limitations stand/walking." Yates' Br. at 11. However, Yates bears the burden to prove his

physical limitations; the Commissioner is not required to prove the absence of a disability.

*Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). Yates must point to evidence showing a

limitation. It is not sufficient to point to a lack of evidence about the absence of a limitation. As

discussed above, the ALJ did not err by rejecting the treating physician's opinion on the limiting

effect of the pain, and Yates has not pointed to record evidence documenting extensive sciatic or

lower back pain.

Yates argues that even if the treating physician's opinion is not controlling, the ALJ erred

by failing to evaluate the opinion under the factors in 20 C.F.R. § 404.1527(d)(2)–(6). He argues

those factors favor crediting the treating physician because he treated Yates over an extended

period of time, provided detailed medical findings to support his opinion, and his opinion was

consistent with the medical expert. If a treating physician's opinion is not controlling, the

regulations instruct the ALJ to evaluate the weight it should receive based on the nature and

extent of the relationship between the doctor and patient, the evidence supporting the opinion, the

consistency of the opinion with the record as a whole, and whether the doctor is a specialist. 20

C.F.R. § 404.1527(d)(2)–(6); *Campbell*, 627 F.3d at 308. Although the ALJ did not go through

the factors in a checklist fashion, she considered them. She relied primarily on the lack of

support for the standing and walking limitations, giving weight to the opinions finding no limitations because they were more consistent with the record as a whole.

## B. Mental impairments

Yates argues the ALJ made an impermissible lay assessment of the medical record when she determined that he could still perform unskilled work despite his organic mental impairment. An ALJ is not permitted to make a medical judgment about an RFC based solely on bare medical findings. *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986). However, the ALJ did not make her own medical judgments. The written decision shows that she relied primarily on the neuropsychological evaluation that concluded Yates was intellectually capable of obtaining employment but may have trouble learning or keeping pace with a new job. The ALJ determined the psychologist was assessing Yates' ability to do skilled work, like his previous jobs, and so this finding did not preclude unskilled work. Yates has not pointed to anything to refute this assumption. Notably, no doctor testified that Yates is cognitively precluded from obtaining employment, although the psychologist noted that he would require some adaptations.

Regarding the anger control issues, Yates argues the ALJ did not have substantial evidence contradicting his treating psychiatrist's opinion that his interpersonal limitations at work were markedly limited. He argues the 2008 opinion is uncontradicted by other substantial record evidence. Yates contends the 2006 and 2008 opinions are not actually in conflict; the more detailed 2008 opinion concerns medical findings on specific areas of daily mental functioning, while the 2006 opinion that his mental conditions are not disabling is a legal conclusion. Yates further contends the ALJ rejected the treating psychiatrist's opinion based

12

solely on the opinion of a non-examining physician and on her own lay assessment of Yates' mental limitations, neither of which constitutes substantial evidence.

Yates is incorrect. The ALJ did not rely on the non-examining psychiatrist's opinion or on her own lay assessment. The ALJ relied on the treating psychiatrist's treatment notes, which she considered inconsistent with a finding of marked limitations in interpersonal relations. The treatment notes are substantial evidence supporting the conclusion that Yates is not disabled. The ALJ characterized them as generally positive, and Yates does not point to evidence disturbing that characterization.

## C. Vocational Expert Testimony

Because the RFC determination is supported by substantial evidence, it is unnecessary to consider Yates' argument that the vocational expert's testimony was flawed. Yates bases his argument on the assumption that the vocational expert was required to consider the limitations identified by his treating physician and psychiatrist but rejected by the ALJ.

### III. Conclusion

For the foregoing reasons, the final decision of the Commissioner is affirmed.

ENTER:

Suzanne B. Conlon
United States District Judge

March 11, 2011